**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COREY BRACEY,** | : | **CIVIL NO.  1:14-CV-2271** |
| | : | |
| **Plaintiff,** | : | **(Judge Caldwell)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **HUNTINGDON COUNTY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case has been referred to the undersigned for pretrial management.  As part of that pretrial management we are obliged to conduct an initial screening review of the plaintiff's complaint to determine whether it states a claim upon which relief may be granted.  Having conducted that review we recommend that a number of parties be dismissed from this action at this time.

The plaintiff, Corey Bracey, a state prisoner, commenced this case by filing a civil complaint on December 1, 2014, (Doc. 1.), which he subsequently amended on December 12, 2014.  (Doc. 6.)  In this amended complaint, Bracey recited that he had been involved in a physical altercation with staff in November 2012, an affray which resulted in exposure of prison staff to Bracey's blood.  (Id.)

Because of this blood exposure, prison staff sought Bracey's consent to obtain a blood sample from the plaintiff for testing to determine if staff had been exposed to HIV or hepatitis.(Id.)   Bracey refused to provide a blood sample, and prison officials went to court to secure an order authorizing them to obtain and disclose this information, a procedure which is expressly authorized by statute.   35 Pa.C.S. §§7601-7611.   Following a hearing conducted before Judge Stewart Kurtz of the Court of Common Pleas of Huntingdon County, Bracey was compelled to provide a blood sample for this testing purpose.  (Id.)

This legal procedure used to gain important medical information relating to inmate and correctional officer safety and well-being forms the basis of Bracey's amended complaint, which seeks injunctive and declaratory relief along with compensatory and punitive damages. (Id.)  In this amended complaint, Bracey sues two correctional officials, alleging abuse of process by these defendants.   These officials have been served, and counsel has entered an appearance on their behalf. (Doc. 16.)  In light of these developments we will not re-examine that sufficiency of the amended complaint as to the corrections defendants, but will await action by defense counsel.

The amended complaint, however, also names Judge Kurtz, and Huntingdon County as defendants.  Judge Kurtz is named as a defendant in this action due to his

2

judicial rulings, and Bracey apparently names the county as a defendant because he believes that it is somehow vicariously responsible for the rulings of this state court judge who sat in that county presiding over cases.

While we have granted Bracey leave to proceed *in forma pauperis,* for the reasons set forth below as part of our legally-mandated duty to screen *pro se in forma pauperis* pleadings, we recommend that this complaint be dismissed as to Judge Kurtz and Huntingdon County.

## II.   <u>Discussion</u>

### A.   <u>Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review</u>

This Court has an on-going statutory obligation to conduct a preliminary review of complaints filed by plaintiffs who seek leave to proceed *in forma pauperis,* and seek redress against government officials.  <u>See </u>28 U.S.C. §§1915 and 1915A. Specifically, we  must assess whether a *pro se, in forma pauperis* complaint "fails to state a claim upon which relief may be granted."  This statutory text, in turn, mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint,

the United States Court of Appeals for the Third Circuit has aptly noted the evolving

standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years.  Beginning with the Supreme Court's opinion in <u>Bell
> Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our
> opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir.
> 2008)] and culminating recently with the Supreme Court's decision in
> <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than the
> possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may

be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>,

20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v.

Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court

need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not

alleged."  <u>Associated Gen. Contractors of Cal. v. California State Council of

Carpenters</u>, 459 U.S. 519, 526 (1983).  As the Supreme Court held in <u>Bell Atlantic</u>

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.'  Twombly, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the

6

defendant is liable for the misconduct alleged.' <u>Iqbal</u>, 129 S.Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' <u>Id</u>.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " <u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011) <u>cert. denied,</u> 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' <u>Iqbal</u>, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' <u>Id.</u> at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' <u>Id</u>." <u>Santiago v. Warminster Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint, and when examining whether a complaint properly invokes the jurisdiction of this Court.

**B.** **This Complaint Fails to State A Claim Upon Which Relief Can Be Granted With Respect to Judge Kurtz and Huntingdon County**

Applying these legal benchmarks in this case, dismissal of this complaint as to Judge Kurtz and Huntingdon County is warranted because the complaint fails on a number of scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. Some of the flaws in this particular *pro se* complaint are discussed separately below.

1.    **The Rooker-Feldman Doctrine Prevents Bracey from Re-litigating these Claims Which He Lost in State Court**

At the outset, the <u>Rooker-Feldman</u> doctrine applies here and bars further consideration of this matter, which arises out of a state case.  Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by the plaintiff, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state case.

This we cannot do.  Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the <u>Rooker-Feldman</u> doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine.  <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....".  <u>See also</u> <u>Desi's Pizza, Inc. v. City of Wilkes Barre</u>, 321 F.3d 411, 419 (3d Cir.2003).  "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions."  <u>Desi's Pizza</u>, 321 F.3d at 419.

<u>Gary v. Braddock Cemetery,</u> 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts,

reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal

district court of jurisdiction in some circumstances to review a state court

adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547

(3d Cir. 2006).  Cases construing this jurisdictional limit on the power of federal

courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine,
> holding that it "is confined to cases of the kind from which the doctrine
> acquired its name:  cases brought by state-court losers complaining of
> injuries caused by state-court judgments rendered before the district
> court proceedings commenced and inviting district court review and
> rejection of those judgments."  [Exxon Mobil Corp. v. Saudi Basic
> Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance
> v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059
> (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently

recognized that the Rooker-Feldman doctrine prevents federal judges from

considering civil rights lawsuits which seek to re-examine state domestic relations

court rulings that are presented "by state-court losers complaining of injuries caused

by state-court judgments rendered before the district court proceedings commenced."

Kwasnik v. Leblon, 228 F. App'x  238, 242 (3d Cir. 2007).  In such instances, the

federal courts have typically deferred to the state court decisions, and rebuffed efforts

to use federal civil rights laws to review, or reverse, those state court rulings. <u>See,</u> <u>e.g.,</u> <u>Marran v. Marran</u>, 376 F.3d 143 (3d. Cir. 2004); <u>Kwasnik</u> 228 F. App'x  238, 242; <u>Smith v. Department of Human Services</u>, 198 F. App'x 227 (3d Cir. 2006); <u>Van</u> <u>Tassel v. Lawrence County Domestic Relations Section</u>, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) <u>aff'd sub nom.</u> <u>Van Tassel v. Lawrence County Domestic Relations</u> <u>Sections</u>, 390 F. App'x 201 (3d Cir. 2010)(<u>Rooker-Feldman</u> doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); <u>Buchanan</u> <u>v. Gay</u>, 491 F. Supp. 2d 483, 487 (D. Del. 2007); <u>Rose v. County of York</u>, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); <u>Logan v. Lillie</u>, 965 F. Supp. 695, 696 (E.D. Pa. 1997) <u>aff'd</u>, 142 F.3d 428 (3d Cir. 1998);  <u>Behr v. Snider</u>, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the <u>Rooker-Feldman</u> doctrine in the field, the plaintiff's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced," simply may not be pursued in this federal forum and should be dismissed.  <u>Kwasnik v. Leblon</u>, 228 F. App'x  238, 242 (3d Cir. 2007).

## 2.    This Court Should Abstain From Ruling Upon Claims for Injunctive Relief in This State Case

Further, we note that the plaintiff also plainly requests an injunction enjoining the state court in some way.  (Doc. 1.)  To the extent that the complaint invites this Court to enjoin pending state cases, this *pro se* pleading runs afoul of a settled tenet of federal law, the Younger abstention doctrine.

The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government.  As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding.  See Younger v. Harris, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')."  Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application.  As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising
> jurisdiction over a particular claim where resolution of that claim in
> federal court would offend principles of comity by interfering with an
> ongoing state proceeding." <u>Addiction Specialists, Inc. v. Twp. of
> Hampton</u>, 411 F.3d 399, 408 (3d Cir.2005) (citing <u>Younger v. Harris</u>,
> 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the
> <u>Younger</u> doctrine allows a district court to abstain, but that discretion
> can properly be exercised only when (1) there are ongoing state
> proceedings that are judicial in nature; (2) the state proceedings
> implicate important state interests; and (3) the state proceedings afford
> an adequate opportunity to raise federal claims. <u>Matusow v. Trans-
> County Title Agency, LLC</u>, 545 F.3d 241, 248 (3d Cir.2008).

<u>Kendall v. Russell</u>, 572 F.3d at 131.

Once these three legal requirements for <u>Younger</u> abstention are met, the

decision to abstain rests in the sound discretion of the district court and will not be

disturbed absent an abuse of that discretion. <u>Lui v. Commission on Adult

Entertainment Establishments</u>, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying

these standards, federal courts frequently abstain from hearing matters which

necessarily interfere with on-going state cases. <u>Lui v. Commission on Adult

Entertainment Establishments</u>, 369 F.3d 319 (3d Cir. 2004); <u>Zahl v. Harper</u>, 282 F.3d

204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal

prerequisites for <u>Younger</u> abstention are present here. First, it is evident that there

were state proceedings in this case. Second, it is also apparent that those proceedings

afforded the plaintiff a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases.  See Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).  Finally, it is clear that the state proceedings implicate important state interests.  See, e.g., Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004).  However, given the important state interests in the adjudication of these matters relating to correctional staff and state inmate health and safety, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004);  Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

### 3.    The Judge and County Named in This Lawsuit Are Entitled to Immunity

Furthermore, in his complaint Bracey sues a state judge and the county in which that judge presides over cases.  These claims fail for two reasons.  First, to the

extent that the plaintiff seeks in his complaint to hold a judicial officer, and the county where he presides, personally liable for civil rights violations, it is well-settled that judges are individually cloaked with immunity from liability.  The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities.  In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n.20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.  In this regard, the broad scope of this immunity was clearly articulated by this Court in the following terms:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)).  "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted).  Therefore, "[a] judge is absolutely immune from liability for

his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," <u>Stump v. Sparkman</u>, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" <u>Goldhaber v. Higgins</u>, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." <u>Mireles</u>, 502 U.S. at 12.

<u>Catanzaro v. Collins</u>, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) <u>aff'd,</u> 447 F. App'x 397 (3d Cir. 2011).

Since a judge is immune from any form of civil liability for judicial acts, it follows that the county cannot be held vicariously liable for judicial acts by judges, acts which cannot give rise to direct civil liability for these judicial actors.

Furthermore, Bracey errs when he suggest that the action of the judge is somehow legally attributable to the county. These state court agencies, which include the courts and the various county common pleas court domestic relations agencies, are defined by statute as arms of the state courts, and are institutions of state government. <u>See, e.g.</u>, <u>Walters v. Washington County</u>, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); <u>Van Tassel v. Lawrence County Domestics Relations Section</u>, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Therefore, individual counties cannot be held liable for the actions of state court judges, who are part of the unified state court system.

16

Since the courts are institutions of state government, this complaint further runs afoul of basic constitutional rules limiting lawsuits against state agencies and officials.  As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI.  By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies.  Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment.  Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens.  Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).  The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system.  These court officers and agencies enjoy immunity from lawsuit under the Eleventh Amendment.  See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March

23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court. These longstanding, constitutionally-grounded immunities also directly apply here and prevent the plaintiff from maintaining this civil action for damages against the judicial and county defendants he has named in his amended complaint, all of whom should be dismissed from this action.

In sum, this amended complaint fails to state a claim upon which relief may be granted with respect to Judge Kurtz and Huntingdon County for multiple reasons. Having conducted this screening analysis and determined that this complaint is wanting as to these two defendants on numerous scores, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, however, the complaint fails to state a viable civil rights cause of action against these two defendants, and the factual and legal grounds proffered in support of the amended complaint make it clear that he has

no right to relief.  Therefore, granting further leave to amend would be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore, we recommend dismissal of these defendants with prejudice.

### III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's amended complaint be dismissed with respect to defendant Kurtz and Huntingdon County.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of May 2015.

***<u>S/Martin C.  Carlson</u>***
Martin C. Carlson
United States Magistrate Judge
