**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COREY BRACEY,** | : | **CIVIL NO.  1:14-CV-2271** |
| | : | |
| **Plaintiff,** | : | **(Judge Caldwell)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ADAM PARK, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The plaintiff, Corey Bracey, is a state prisoner, who commenced this case by filing a civil complaint on December 1, 2014, (Doc. 1.), which he subsequently amended on December 12, 2014.  (Doc. 5.)  In this amended complaint, Bracey recited that he had been involved in a physical altercation with prison staff at the State Correctional Institution (SCI) Huntingdon on November 17, 2012, an affray which resulted in exposure of one prison staff member, Defendant Adam Park, to Bracey's blood. (Id.)

Because of this blood exposure,  prison staff sought Bracey's consent to obtain a blood sample from the plaintiff for testing to determine if staff had been exposed to HIV or hepatitis.  (Id.)  Bracey refused to provide a blood sample, and prison

officials, acting through their counsel Defendant Travis Anderson, went to state court to secure an order authorizing them to obtain and disclose this information, a procedure which is expressly authorized by statute. 35 Pa.C.S. §§7601-7611. Following a hearing conducted before Judge Stewart Kurtz of the Court of Common Pleas of Huntingdon County, Bracey was compelled to provide a blood sample for this testing purpose.  (Id.)  Bracey appealed this ruling in state court, but to no avail. The decision of the state judge was upheld when Bracey's appeal was dismissed as moot.

This legal procedure used to gain important medical information relating to inmate and correctional officer safety and well-being now forms the basis of Bracey's amended complaint in federal court, a complaint which was filed some two years after-the-fact, and which seeks injunctive and declaratory relief along with compensatory and punitive damages.  (Id.)  In this amended complaint, Bracey sues the correctional staff member exposed to his blood in November 2012, Adam Park, and the attorney who successfully litigated the state case, Travis Anderson, alleging abuse of process by both of these defendants.  These officials have been served, and

have now filed a motion to dismiss Bracey's complaint. (Doc. 21.) This motion has

been briefed by both parties, (Docs. 22 and 29.),[1] and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that the amended complaint

be dismissed and this action be closed.

## II.   Discussion

### A.   Motion to Dismiss–Standard of Review

The corrections defendants have moved to dismiss this amended complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides

that a complaint should be dismissed for "failure to state a claim upon which relief

can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard

for legal sufficiency of a complaint, the United States Court of Appeals for the Third

Circuit has aptly noted the evolving standards governing pleading practice in federal

court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in
> recent years. Beginning with the Supreme Court's opinion in Bell
> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our
> opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.
> 2008)]and culminating recently with the Supreme Court's decision in
> Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards
> have seemingly shifted from simple notice pleading to a more

---

[1] We note that we have also granted the defendants leave to file a reply brief,
(Doc. 30.), but because we have concluded that Bracey's claims fail on multiple
grounds we have elected to act upon the claims as currently briefed by the parties.

heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

4

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u> at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u> at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u> a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level

of mere speculation.  As the United States Court of Appeals for the Third Circuit has

stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis.  First,
> the factual and legal elements of a claim should be separated.  The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions.  Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a 'plausible claim for relief.'  In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to 'show' such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has also observed:  "The Supreme Court in Twombly

set forth the 'plausibility' standard for overcoming a motion to dismiss and refined

this approach in Iqbal.  The plausibility standard requires the complaint to allege

'enough facts to state a claim to relief that is plausible on its face.'  Twombly, 550

U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the

factual pleadings 'allow[ ] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'  Iqbal, 129 S.Ct. at 1949 (citing

Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more

than a sheer possibility that a defendant has acted unlawfully.'  Id.  A complaint

which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of

the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.   Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.   Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the amended complaint, and when examining whether a complaint properly invokes the jurisdiction of this court.

### B. This Amended Complaint Fails to State A Claim Upon Which Relief May Be Granted

Applying these legal benchmarks in this case, dismissal of this amended complaint is warranted because the amended complaint fails on a number of scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. Some of the flaws in this particular *pro se* amended complaint are discussed separately below.

### 1. To the Extent That Bracey Seeks to Re-litigate Claims That Were Previously Tried in State Court, the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters

At the outset, to the extent that Bracey's amended complaint seeks to re-litigate a matter which has previously been conclusively resolved by the state courts in 2012, the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this

8

amended complaint relating to rulings in his prior state case by the state courts. Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation.  It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988).  Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.'  Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated.  "The prerequisites for the application of issue preclusion are satisfied when:  '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both

> sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to the claims made by Bracey in the instant complaint concerning rulings in his prior state case by the state courts under state law, the legal requisites for issue preclusion are fully satisfied, since: " '(1) the issue

sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979).  Therefore, these claims should be dismissed.

> 2**.**     **The Rooker-Feldman Doctrine Prevents Bracey from Re-litigating these Claims Which He Lost in State Court**

In addition, the Rooker-Feldman doctrine applies here and bars further consideration of this matter, which arises out of a previously litigated state case. Given these state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by the plaintiff, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state case.

This we cannot do.  Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions.  As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that
> gave rise to the doctrine.  Rooker v. Fidelity Trust Co., 263 U.S. 413, 44
> S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals
> v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).  The
> doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal
> judgments or decrees rendered by the highest court of a state in which
> a decision could be had, may be reviewed by the Supreme Court....".  See
> also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d
> Cir.2003).  "Since Congress has never conferred a similar power of
> review on the United States District Courts, the Supreme Court has
> inferred that Congress did not intend to empower District Courts to
> review state court decisions."  Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts,

reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal

district court of jurisdiction in some circumstances to review a state court

adjudication."  Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547

(3d Cir. 2006).  Cases construing this jurisdictional limit on the power of federal

courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine,
> holding that it "is confined to cases of the kind from which the doctrine
> acquired its name:  cases brought by state-court losers complaining of
> injuries caused by state-court judgments rendered before the district
> court proceedings commenced and inviting district court review and
> rejection of those judgments."  [Exxon Mobil Corp. v. Saudi Basic
> Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance
> v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059
> (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007).  In such instances, the federal courts have typically deferred to the state court decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings.  See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp. 2d 672, 690 (W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998);  Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the <u>Rooker-Feldman</u> doctrine in the field, the plaintiff's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced," simply may not be pursued in this federal forum and should be dismissed.  <u>Kwasnik v. Leblon</u>, 228 F. App'x  238, 242 (3d Cir. 2007).

### 3. <u>This Court Should Abstain From Ruling Upon Claims for Injunctive Relief in This State Case</u>

Further, we note that the plaintiff also appears to request an injunction enjoining the state court in some way.  (Doc. 5.)  To the extent that the complaint invites this court to enjoin state cases, this *pro se* pleading runs afoul of a settled tenet of federal law, the <u>Younger</u> abstention doctrine.

The <u>Younger</u> abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government.  As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding.  <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed

as a violation of the national policy forbidding federal courts to stay or enjoin

pending state court proceedings except under special circumstances.')." Kendall v.

Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by

these same principles in its application.  As the United States Court of Appeals for

the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising
> jurisdiction over a particular claim where resolution of that claim in
> federal court would offend principles of comity by interfering with an
> ongoing state proceeding."  Addiction Specialists, Inc. v. Twp. of
> Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris,
> 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the
> Younger doctrine allows a district court to abstain, but that discretion
> can properly be exercised only when (1) there are ongoing state
> proceedings that are judicial in nature; (2) the state proceedings
> implicate important state interests; and (3) the state proceedings afford
> an adequate opportunity to raise federal claims.  Matusow v. Trans-
> County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the

decision to abstain rests in the sound discretion of the district court and will not be

disturbed absent an abuse of that discretion. Lui v. Commission on Adult

Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying

these standards, federal courts frequently abstain from hearing matters which

necessarily interfere with on-going state cases.   Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present here.  First, it is evident that there were state proceedings in this case.  Second, it is also apparent that those proceedings afforded the plaintiff a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases.  See Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).  Finally, it is clear that the state proceedings implicate important state interests.  See, e.g., Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court.  Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004).  However, given the important state interests in the adjudication of these matters relating to correctional staff and state inmate health and safety, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time.  Lui v. Commission on Adult Entertainment

Establishments, 369 F.3d 319 (3d Cir. 2004);  Zahl v. Harper, 282 F.3d 204 (3d Cir.

2002).

### 4.     The Defendants Are Entitled to Qualified Immunity From Damages

Furthermore, in his complaint Bracey sues a correctional officer and an

attorney for relying upon a legal process prescribed by state law to obtain a blood

sample from the plaintiff in order to ensure staff health and safety.  Even if Bracey's

amended complaint had stated some sort of colorable constitutional claim, we

conclude that the defendants would still be entitled to qualified immunity from these

claims for damages.  In order to establish a civil rights claim Bracey must show the

deprivation of a right secured by the United States Constitution or the laws of the

United States.  Satisfying these elements alone, however, does not guarantee that

Bracey is entitled to recover damages from these public officials.  Government

officials performing "discretionary functions," are insulated from suit if their conduct

did not violate a "clearly established statutory or constitutional right[] of which a

reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999);

see also Pearson v. Callahan, 555 U.S. 223 (2009).  This doctrine, known as qualified

immunity, provides officials performing discretionary functions not only defense to

liability, but also "immunity from suit." <u>Crouse v. S. Lebanon Twp.</u>, 668 F. Supp. 2d

664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted).  Qualified immunity

> balances two important interests – the need to hold public officials
> accountable when they exercise power irresponsibly and the need to
> shield officials from harassment, distraction, and liability when they
> perform their duties reasonably.  The protection of qualified immunity
> applies regardless of whether the government official's error is "a
> mistake of law, a mistake of fact, or a mistake based on mixed questions
> of law and fact."

<u>Pearson</u>, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given

case, require a court to undertake two distinct inquiries.  First, the court must evaluate

whether the defendant violated a constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194,

201-02 (2001), abrogated in part by <u>Pearson</u>, 555 U.S. 223; <u>Curley v. Klem</u>, 499 F.3d

199, 206 (3d Cir. 2007); <u>Williams v. Bitner</u>, 455 F.3d 186, 190 (3d Cir. 2006).  If the

defendant did not actually commit a constitutional violation, then the court must find

in the defendant's favor.  <u>Saucier</u>, 533 U.S. at 201.  If the defendant is found to have

committed a constitutional violation, the court must undertake a second, related

inquiry to assess whether the constitutional right in question was "clearly established"

at the time the defendant acted.  <u>Pearson</u>, 555 U.S. at 232; <u>Saucier</u>, 533 U.S. at 201-

02.  The Supreme Court has instructed that a right is clearly established for purposes

of qualified immunity if a reasonable state actor under the circumstances would

understand that his conduct violates that right.  Williams, 455 F.3d at 191 (citing

Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated

must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615.  The

Supreme Court has explained that, at least in some cases, "a general constitutional

rule already identified in the decisional law may apply with obvious clarity to the

specific conduct in question, even though the very action in question has [not]

previously been held unlawful." Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting

United States v. Lanier, 520 U.S. 259, 271 (1997) (internal quotation marks and

citation omitted)).  In some cases, "officials can still be on notice that their conduct

violates established law even in novel factual circumstances." Wilson, 455 F.3d at

191 (quoting Hope, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially,

Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and

award qualified immunity to a defendant if it is apparent that the defendant did not

violate rights that were clearly established at the time the defendant acted.  Id.  Where

a court elects to address the alleged constitutional violations, however, the court's

analysis of the merits for purposes of summary judgment merges with analysis of the

deprivation of federal rights for purposes of qualified immunity.  Gruenke v. Seip,

225 F.3d 290, 299-300 (3d Cir. 2000); <u>Crouse</u>, 668 F. Supp. 2d at 671; <u>see also</u> <u>Grant</u> <u>v. City of Pittsburgh</u>, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  <u>See</u> <u>Montanez v. Thompson</u>, 603 F.3d 243 (3d Cir. 2010).

In the context of malicious prosecution claims, an essential element to such a claim is that the federal civil rights plaintiff must have actually ultimately prevailed in the underlying state litigation.  <u>See</u> <u>Kossler v. Crisanti</u>, 564 F.3d 181, 183 (3d Cir. 2009).  Here it is undisputed that Bracey did not prevail in his state case.  Rather, he lost that case.   Therefore, this essential element to a malicious prosecution claim–prior success on the merits of the underlying case–is notably lacking here.  Given this undisputed fact, we find that the defendants are entitled to qualified immunity in this case.  Nothing could have alerted these officials that their actions in seeking, and obtaining, a court order authorizing them to take a blood sample from Bracey in order to ensure the safety of a correctional officer who had been exposed

to Bracey's bodily fluids would somehow violate "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999).  Therefore, these officials should be entitled to qualified immunity from damages in this case.[2]

### 5.    The Pennsylvania Department of Corrections Must be Dismissed From The Case

Finally, contrary, to the suggestion contained in his response to this motion to dismiss that he may still maintain a claim for damages from the Pennsylvania Department of Corrections, Bracey's damages claims against this state agency are barred by the Eleventh Amendment to the United States Constitution.  In this case, dismissal of the Pennsylvania Department of Corrections, a state agency, from this amended complaint is warranted because this *pro se* amended complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials.

First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be

---

[2]While the defendants have not separately argued qualified immunity in this motion, this court is entitled to address this defense *sua sponte*, in a case such as this where it is plainly appropriate.  See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (affirming *sua sponte* recommendation of qualified immunity by U.S. magistrate judge).

construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI.  By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies.  Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment.  Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens.  Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).  Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress.  The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's criminal justice system like the Pennsylvania Department of Corrections.  As the United States Court of Appeals for the Third Circuit has aptly observed with respect to the Pennsylvania Department of Corrections:

> Generally, states are immune from suit by private parties in the federal courts.  The Eleventh Amendment of the United States Constitution provides:  The Judicial power of the United States shall not be construed

to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.  U.S. Const.amend. XI.  Although this case involves a suit brought by a citizen against his own state, the Eleventh Amendment has long been interpreted to prohibit such suits as well.  See, e.g. Kimel, 528 U.S. at ----, 120 S.Ct. at 640 ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against non-consenting States.") (citing e.g., College Sav. Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); Seminole Tribe v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)); Hans v. Louisiana, 134 U.S. 1, 13, 10 S.Ct. 504, 33 L.Ed. 842 (1890) ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.").  Moreover, the type of relief sought is irrelevant to the question of Eleventh Amendment immunity.  See Seminole Tribe, 517 U.S. at 58, 116 S.Ct. 1114.  *Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, see Pa.Stat.Ann., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity*.

Lavia v. Pennsylvania, Dept. of Corr., 224 F.3d 190, 195 (3d Cir. 2000)(emphasis added).

Here,  Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Pennsylvania Department of Corrections, and the Commonwealth clearly has not waived its immunity.  Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b).  Thus, while Pennsylvania has waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, See 42 Pa.C.S.A. §8522, Section 8521(b) flatly states

that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b).

Moreover as a matter of statutory interpretation, the plaintiff cannot bring a damages action against this state agency or state officials in their official capacity since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983, the principal federal civil rights statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989). In sum, this federal civil rights claim for damages against the Pennsylvania Department of Corrections is barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. §1983. Therefore, since the Department of Corrections, as an agency of state government cannot be sued in this fashion in federal court, the Department of Corrections should be dismissed as a defendant from this action.[3]

---

[3]Given this recommendation which resolved Bracey's amended complaint on multiple alternate grounds, we need not reach the statute of limitations claim made by the defendants in their motion to dismiss.

24

## III.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the

defendants' motion to dismiss (Doc. 21.), be GRANTED and the plaintiff's amended

complaint be DISMISSED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen
> (14) days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all parties,
> written objections which shall specifically identify the portions of the
> proposed findings, recommendations or report to which objection is
> made and the basis for such objections.  The briefing requirements set
> forth in Local Rule 72.2 shall apply.  A judge shall make a de novo
> determination of those portions of the report or specified proposed
> findings or recommendations to which objection is made and may
> accept, reject, or modify, in whole or in part, the findings or
> recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis of
> that record.  The judge may also receive further evidence, recall
> witnesses or recommit the matter to the magistrate judge with
> instructions.

Submitted this 13th day of July 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge
